**United States District Court**
**District of Massachusetts**

---

|  |  |
|---|---|
| THOMAS M. SHEA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| IRON WORKERS DISTRICT COUNCIL OF ) | |
| NEW ENGLAND PENSION FUND, )   Civil Action No. | |
| TRUSTEES OF THE IRON WORKERS )   13-12725-NMG | |
| DISTRICT COUNCIL OF NEW ENGLAND ) | |
| PENSION FUND, IRON WORKERS ) | |
| DISTRICT COUNSEL OF NEW ENGLAND ) | |
| ANNUITY FUND and TRUSTEES OF THE ) | |
| IRON WORKERS DISTRICT COUNCIL OF ) | |
| NEW ENGLAND ANNUITY FUND, ) | |
| ) | |
| Defendants. ) | |

---

**MEMORANDUM & ORDER**

GORTON, J.

This case involves allegations that two employers unlawfully refused to award pension credits and annuity contributions to an employee for his periods of military service, all in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301, et seq..

Pending before the Court are plaintiff's and defendants' cross-motions for summary judgment. For the reasons that follow, plaintiff's motion will be allowed, in part, and denied, in part, and defendants' motion will be denied.

## I.   Background and procedural history

### A.   The parties

Plaintiff Thomas M. Shea ("Shea" or "plaintiff") is an ironworker and union member who has participated in defendants' pension and annuity fund programs since 1982.  Plaintiff enlisted in the United States Navy Reserve in 1999 and now serves as a Senior Chief Petty Officer.  He resides in Massachusetts.

Defendant Iron Workers District Council of New England Pension Fund ("the Pension Fund") is managed in accordance with a multi-employer, defined-benefit pension plan known as "the Pension Plan."  The Pension Plan is an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A).  The Pension Fund is an employer within the meaning of § 4303(4)(c) of USERRA, with respect to its obligation to provide benefits to eligible employees pursuant to § 4318.

Defendant Trustees of the Iron Workers District Council of New England Pension Fund ("the Pension Fund Trustees") administers the Pension Fund and is the "plan sponsor" under ERISA, 29 U.S.C. § 1002(16)(B).

Defendant Iron Workers District Council of New England Annuity Fund ("the Annuity Fund") is managed in accordance with a multi-employer, defined-contribution pension plan known as

"the Annuity Plan."  The Annuity Plan is an employee pension plan within the meaning of § 1002(2)(A) of ERISA and is an employer within the meaning of § 4303(4)(c) of USERRA, with respect to its obligation to provide benefits to eligible employees pursuant to § 4318.

Defendant Trustees of the Iron Workers District Council of New England Annuity Fund ("the Annuity Fund Trustees") administers the Annuity Fund and is the plan sponsor under § 1002(16)(B) of ERISA.

**B.    The Pension Plan**

The Pension Plan provides monthly benefits to retired employees who have accumulated a total of 30 pension credits and at least 15 pension credits as of December 31, 2006.  Employees receive 1) one full pension credit if they work at least 1,200 hours in a calendar year, 2) a fraction of a pension credit if they work between 300 and 1,200 hours in a calendar year and 3) no pension credit if they work fewer than 300 hours in a calendar year.  Employees who work more than 1,200 hours in a calendar year can "bank" the extra hours and apply them to another calendar year.

The Pension Plan allows servicemembers returning from a period of military service to accrue retroactively pension credits for that period as long as they 1) are not dishonorably discharged, 2) return to employment with a covered employer

within 90 days of completing the period of service, 3) work at least 300 hours for a covered employer within one year from the date of discharge and 4) accrue 2.5 pension credits within five years after the date of discharge.

The Pension Plan also incorporates the five-year limit set forth in USERRA which provides servicemembers with reemployment rights and benefits so long as, inter alia,

> the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years . . . .

§ 4312(a)(2).  The five-year limit does not apply to periods of military service during which the servicemember was ordered to or retained on active duty 1) in accordance with 10 U.S.C. § 12302 which pertains to servicemembers in "Ready Reserve", see § 4312(c)(4)(A), or 2) under any provision of law due to a war or national emergency declared by the President or Congress, as determined by the appropriate Secretary, unless the active duty consists of training, see § 4312(c)(4)(B).

### C.   **The Annuity Plan**

The Annuity Plan requires the Annuity Fund Trustees to "establish individual Employee Accounts to track each Annuity Plan member's interest in the Annuity Fund."  A servicemember who is timely reemployed after a period of military service is entitled to an annuity contribution from the employer to his or

her individual employee account for that period of military service.  The Annuity Plan places the responsibility for making those contributions on the last employer for whom the servicemember worked before entering military service.

The Annuity Plan also incorporates the five-year limit on cumulative military service set forth in § 4312(a)(2) and the active duty exemptions set forth in § 4312(c)(4)(A) and (B).

### D.   Plaintiff's military and employment history

Over the course of his employment from 1982 to 2007, plaintiff participated in the Pension and Annuity Funds, earned 22 pension credits and banked 6.13 supplementary credits.  His last employer prior to his first military deployment in 2007 was Capco Steel Corporation ("Capco Steel"), a company which "has since gone out of business."

#### 1.   First deployment

Plaintiff's first deployment, to Iraq, began on June 4, 2007 and ended ten and a half months later on April 18, 2008. His order of deployment expressly stated:

> The member is ordered to active duty . . . in support of the national emergency declared under Presidential Proclamation 7463 of 14 SEP 01.  Under the provisions of [38 U.S.C. § 4312(c)(4)(A) and (B)], this period of active duty is exempt from the 5-year cumulative service limitation on reemployment rights under [USERRA].

On March 11, 2002, the Secretary of the Navy issued a memorandum to the Chief of Naval Operations declaring that:

> In accordance with 38 U.S.C. 4312(c)(4)(b) . . ., I have determined that Navy and Marine Corps Reserve personnel voluntarily ordered to or retained [on] active duty (other than for training) in support of the national emergency declared under Presidential Proclamation 7463 of [14] September 2001, will have those periods of service exempted [f]rom the five-year limitation for reemployment rights under [USERRA].

After his honorable discharge from deployment, plaintiff attended military training for 58 days between mid-April, 2008 and late August, 2008.  He subsequently worked 112 hours for Capco Steel between August 25, 2008 and September 14, 2008.

### 2.   Second deployment

Shea's second deployment, to Afghanistan, began on January 1, 2009 and ended one year later on January 6, 2010.  His order of deployment contained the same declaration of exemptions under § 4312(c)(4)(A) and (B) as the first order of deployment, excerpted above.  To prepare for the deployment, he commenced his time on military duty a few months in advance so that he could attend Construction Inspector School from October 15, 2008 to December 17, 2008.

Plaintiff asserts that he did not apply for reemployment when he returned from his second deployment because 1) his third deployment began within 90 days of his date of honorable discharge and 2) the Pension Plan purportedly treats "any non-work periods less than 90 days apart" as one continuous period.

### 3.   Third deployment

Shea's next deployment, to Bahrain, began on April 1, 2010 and was completed six months later on September 30, 2010. Plaintiff avers that he was "[o]rdered to active duty for special work under the authority of title 10 USC section 12301(d)" and that the Secretary of the Navy had previously issued a memorandum, dated March 1, 2007, providing that

> [t]he secretaries of the Military Departments have each determined the period of service under 10 U.S.C. 12301(d) as exempt from the five year limit as provided in 38 U.S.C. 4312(c)(4)(B).

After he was honorably discharged from deployment, plaintiff left immediately for his next deployment.  The parties agree that his third and fourth deployments occurred during one continuous period.

### 4.   Fourth deployment and applications for benefits

Plaintiff was sent to Kuwait for his fourth deployment beginning on October 1, 2010.  His military documentation indicates that the deployment was completed 11 months later, on September 3, 2011.  The order for his fourth deployment contained the same declaration of exemptions under § 4312(c)(4)(A) and (B) as the first order of deployment.

Plaintiff first applied for service pension benefits in February, 2011 and again in August, 2011.  The Pension Fund Trustees denied the applications based upon his purported

failure to satisfy the reemployment requirements in the Pension Plan that he 1) timely return to covered employment, 2) work at least 300 hours within one year of his date of discharge and 3) earn 2.5 pension credits within five years of the date of his discharge.

Prior to his official release from deployment, plaintiff purportedly worked eight hours for Francis Harvey & Sons on August 26, 2011.  He also sent a letter, dated August 26, 2011, to a Michael J. Durant at "Ironworkers Local Union 7" stating:

> Please accept this letter as formal notice that I have returned to work on 26AUG2011.  Pursuant to [§§ 4301-4335 of USERRA], I am entitled to be reinstated as soon as possible in my former position and am entitled to receive benefits accrued during my absence.

Plaintiff was honorably discharged from the Navy.  Within 90 days, he went to his local union hall at least nine times and

> signed his name on the out-of-work list, talked to other union members about prospective jobs, and notified the business agent that he was returning from active duty and seeking to be reemployed.

He subsequently worked 24 hours for Shiloh Steel Erectors ("Shiloh Steel") from December 5, 2011 through December 7, 2011.

### 5.   Fifth deployment

Plaintiff claims that he returned to military service on December 7, 2011 in anticipation of his fifth deployment, to Afghanistan, which began on January 20, 2012 and was completed about 18 months later on July 9, 2013.  His order of deployment

contained the same declaration of exemptions under
§ 4312(c)(4)(A) and (B) as the first order of deployment.

Within 90 days of his return from Afghanistan, he worked
eight hours for Magnificent Concrete ("Magnificent Concrete")
and 56 hours for Structures Derek International ("Structures
Derek") between August and October, 2013.  He subsequently
worked 133 hours for Southern Folger Detention Equipment Company
("Southern Folger") in December, 2013 and January, 2014.

### 6.   Later deployments

Plaintiff asserts that his sixth deployment sent him back
to Afghanistan, beginning in late January, 2014 and ending one
year later.  He submits that, although he cannot locate his
order of deployment, the period of service "almost certainly
falls under § 4312(c)(4)(A) & (B) and would therefore be exempt"
from the five-year limit on cumulative military service.  He
does not contend that he applied for reemployment or worked for
a covered employer within 90 days of his return from his sixth
deployment.

Shea finally declares that his seventh deployment sent him
to Africa, beginning in May, 2015, and continuing through at
least November, 2015, and thus lasted for at least six months.
The order of deployment contained the same declaration of
exemptions under § 4312(c)(4)(A) and (B) as the first order of
deployment.

Defendants dispute that characterization of the facts and proclaim that his sixth deployment began in September, 2013, and continued until at least April, 2015, more than 18 months later.

### E.   Procedural history

In October, 2013, plaintiff initiated this USERRA action by filing a complaint alleging that the Pension Fund and Pension Fund Trustees 1) refused to award him pension credits for his periods of military service in violation of §§ 4302 and 4318, 2) discriminated against him based upon his status as a servicemember by requiring him, but not non-servicemembers, to complete additional years of employment in order to receive pension benefits in violation of § 4311 and 3) refused to contribute to his annuity account in violation of § 4318.  Shea later amended the complaint to name the Annuity Fund and Annuity Fund Trustees as additional defendants.

The parties filed the pending cross-motions for summary judgment in October, 2015.

## II.  Cross-motions for summary judgment

### A.   Legal standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co.*,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.*,* 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving

party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Application**

In their cross-motions for summary judgment, the parties specifically dispute whether plaintiff is entitled to accrue

pension credits for the 2007-2013 periods of his military service.  If he is entitled to accrue pension credits for those periods, he easily satisfied the 30-credit requirement as of 2011, when he applied for pension benefits, and as of 2013, when he returned from his fifth deployment.  Satisfaction of the 30-credit requirement would render him eligible to receive pension benefits in retirement and annuity contributions for his periods of military service.

### Count 1: Failure to award accrued pension credits

Count 1 asserts that defendants violated §§ 4302 and 4318 by imposing reemployment conditions on plaintiff beyond what USERRA requires and refusing to award plaintiff pension credits that he accrued during his periods of military service.

USERRA entitles a returning servicemember to reemployment rights and benefits if 1) he or she notifies the employer of such military service in advance, 2) the cumulative length of the impending absence and all previous absences required by military service does not exceed five years and 3) he or she notifies the employer of his or her intent to return to employment within 90 days after completing the period of military service. §§ 4312(a) and (e).

Section 4318 provides that

> [e]ach period served by a person in the uniformed
> services shall, upon reemployment under this chapter, be
> deemed to constitute service with the employer . . . for

-12-

the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

§ 4318(a)(2)(B).  Section 4302 provides that USERRA

1) supersedes any state law, policy, plan or practice that

reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit

but 2) does not supersede, nullify or diminish any federal or state law, policy, plan or practice that establishes a more beneficial or additional right or benefit. § 4302.

### a.    Five-year limit on military service

Defendants first contend that 1) plaintiff's cumulative military service exceeds the five-year limit set by USERRA and incorporated by the Pension Plan, 2) he does not specify in his memoranda whether or how his periods of military service are exempt from the five-year limit and thus 3) he is not entitled to reemployment benefits such as the accrual of pension credits for his periods of military service.

Plaintiff responds that he has not exceeded five years of cumulative military service based upon evidence that 1) the order of deployment for his third deployment, to Bahrain, implicitly declared that period of military service exempt under § 4312(c)(4)(B) and 2) the orders of deployment for his other deployments expressly declared those periods of service exempt

-13-

under §§ 4312(c)(4)(A) and (B).  Defendants do not dispute those assertions.

The Court agrees with plaintiff and finds that the periods of his deployments between 2007 and 2013 are exempt from the five-year limit.  The Court also finds that the remaining periods of military service, even if they are not exempt from the limit, amount to only three years of service and thus fall short of the five-year threshold.  That calculation is based upon the undisputed facts that Shea 1) completed 58 days of training during the four or five months after his first deployment, 2) attended two months of construction training before he began his second deployment and 3) was deployed a sixth time in either September, 2013 or January, 2014 and remains deployed to this day.

The five-year limit on cumulative military service thus does not preclude plaintiff's claim for reemployment benefits such as pension credits for each relevant period of military service.  Accordingly, defendants' motion for summary judgment with respect to that issue will be denied.

### b.    Supersession of the Pension Plan by USERRA

Plaintiff seeks to invalidate the reemployment requirements in the Pension Plan as unlawful on their face.  He argues that they impose additional prerequisites on pension eligibility

beyond the requirements of § 4318 and in contravention of § 4302.

A servicemember returning from more than 180 days of military service is entitled to reemployment rights and benefits under USERRA if he or she 1) notifies the employer of such military service in advance, 2) has less than five years of cumulative military service and 3) submits an application of reemployment to the employer within 90 days of completing the military service. §§ 4312(a) and (e)(1)(D). A servicemember who submits an untimely application for reemployment does not automatically forfeit his or her reemployment rights and benefits. § 4312(e)(3). Under those circumstances, the servicemember would instead be subject to the rules of conduct, established policy and general practices of the employer concerning employee absence from scheduled work. Id.

Here, Shea contends that a servicemember returning from a period of military service exceeding 180 days need only comply with the USERRA requirement of timely application for reemployment to be entitled to his or her accrued pension credits. He concludes that the requirements in the Pension Plan that he must also work 300 hours for a covered employer within one year and accrue 2.5 pension credits within five years constitute additional prerequisites that are expressly prohibited by § 4302.

-15-

The Court agrees with plaintiff.  A plain reading of § 4312 indicates that, after a period of military service exceeding 180 days, a returning servicemember who applies for reemployment with the employer within 90 days is entitled to accrue pension credits for that period of service, regardless of whether he or she later works 300 hours and accrues 2.5 pension credits in the following months and years.  The reemployment requirements in USERRA thus preempt the 300-hour and 2.5-credit requirements in the Pension Plan with respect to servicemembers who return from military service of longer than 180 days and who timely apply for reemployment.

The Court notes that defendants do not suggest that the reemployment of such servicemembers would 1) be impossible or unreasonable under § 4312(d)(2)(A) due to a change in employer circumstances or 2) impose an undue hardship under § 4312(D)(2)(B) as a result of the servicemember's disability or lack of qualification for the position of reemployment.  Although § 4312(d)(2)(C) permits an employer to withhold reemployment rights or benefits if it can show that the servicemember's pre-service employment was for

> a brief, nonrecurrent period and there [wa]s no
> reasonable expectation that such employment [would]
> continue indefinitely or for a significant period[,]

the bare assertion by defendants that "the nature of employment in the construction industry . . . [is] often sporadic" does not satisfy that burden.

The Court further notes that defendants' argument that the 300-hour and 2.5-credit requirements in the Pension Plan comply with ERISA is misplaced because 1) those Plan requirements are more restrictive than, and thus preempted by, the USERRA requirements concerning a servicemember's entitlement to reemployment rights and benefits and 2) USERRA is a federal statute not preempted by ERISA. See 29 U.S.C. § 1144(d)("Nothing in this [ERISA] subchapter [on the Protection of Employee Benefit Rights] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections [addressing federal laws other than USERRA]) . . . .").

Accordingly, because the 300-hour and 2.5 credit requirements in the Pension Plan are preempted by USERRA specifically with respect to returning servicemembers whose military service exceeds 180 days and who timely apply for reemployment, plaintiff's motion for summary judgment will, to that extent, be allowed and defendants' motion for summary judgment will, to that extent, be denied.

### c.   Timely application for reemployment

The parties dispute whether plaintiff timely applied for reemployment as required by USERRA and the Pension Plan.

As discussed, USERRA provides that a servicemember returning from a period of military service exceeding 180 days must submit an application for reemployment with the employer within 90 days after completing the period of military service. § 4312(e)(1)(D).  The regulations that implement USERRA distinguish between the act of submitting an application for reemployment and the act of reporting to the site of employment. 20 C.F.R. § 1002.115(c) (2006)(emphasis added)("Whether the employee is required to report to work or submit a timely application for reemployment depends upon the length of service . . . .").  The application for reemployment may be written or verbal. Id.

Although the application for reemployment need not follow a particular format, it should at least

> indicate that the employee is a former employee
> returning from service in the uniformed services and
> that he or she seeks reemployment with the pre-service
> employer.

20 C.F.R. § 1002.118 (2006).  The servicemember must submit the application to 1) the pre-service employer, 2) the agent or representative of the pre-service employer with apparent responsibility for receiving employment applications, or 3) the

successor-in-interest to the pre-service employer if there has been a change in ownership. 20 C.F.R. § 1002.119 (2006).

The servicemember may seek or obtain employment with another employer during the 90-day period without giving up his or her reemployment rights with the pre-service employer, unless such alternative employment would constitute cause for the pre-service employer to discipline or terminate the servicemember after reemployment. 20 C.F.R. § 1002.120 (2006).

Plaintiff proclaims that he timely applied for reemployment after each relevant period of military service.

### i.   First deployment

Shea maintains that he complied with the reemployment requirement after his first deployment because he worked 112 hours for Capco Steel within 90 days after finishing his post-deployment military training.  Defendants respond that the 90-day period began on the day that he returned from deployment, not the day that he completed post-deployment training, and that he is ineligible for reemployment rights and benefits because he did not apply for reemployment during that 90-day period.

The evidence is insufficient to support a finding as a matter of law with respect to whether plaintiff properly applied for reemployment.  The act of reporting to the employment site is not equivalent to the act of submitting an application for reemployment.  See 20 C.F.R. § 1002.115(c).  The timeliness of

plaintiff's act of reporting to Capco Steel for employment does not adequately address whether he submitted an application for reemployment with his pre-service employer.

Accordingly, summary judgment is unwarranted with respect to whether plaintiff timely applied for reemployment after his first deployment.

### ii.  Second deployment

Plaintiff submits that he did not need to comply with the reemployment requirement after his second deployment, which ended on January 6, 2010, because that deployment was temporally continuous with his third deployment, which began fewer than 90 days later on April 1, 2010.  Defendants respond that the reemployment requirement did apply to him after that second deployment and that his failure to satisfy that requirement precludes his claim to accrued pension credits for the period of his second deployment.

There is a genuine issue of material fact with respect to whether the third deployment was, in fact, a continuation of the second deployment under the Pension Plan such that the reemployment requirement did not apply.  Summary judgment is unwarranted with respect to whether plaintiff was required to, or did, comply with the reemployment requirement after the second deployment.

### iii. Third deployment

Plaintiff avers that the reemployment requirement did not apply to him after his third deployment because that deployment is deemed to have been part of his fourth deployment. Defendants concede that his third and fourth deployments were "contiguous."

### iv.  Fourth deployment

Plaintiff insists that he complied with the reemployment requirement after his fourth deployment because he 1) worked eight hours for Francis Harvey & Sons before his release from the service, 2) went to his local union hall on multiple occasions during the 90-day period after such release, signed the out-of-work list, talked to other union members about employment positions and notified the business agent at the union hall that he had returned from active duty and was seeking reemployment and 3) subsequently worked 24 hours for Shiloh Steel.

The Court notes that plaintiff does not proffer his August 26, 2011 letter to Ironworkers Local Union 7 as evidence of his compliance with the reemployment requirement, perhaps because he does not consider Ironworkers Local Union 7 to have been his pre-service employer.

Defendants respond to plaintiff's assertions by generally denying that those actions satisfy the reemployment requirement

and specifically denying that plaintiff actually performed work for Francis Harvey & Sons.  They declare that Francis Harvey & Sons awarded him eight hours of employment benefits merely as a courtesy.

The Court finds that plaintiff's employment history with Francis Harvey & Sons does not properly address whether he applied for reemployment with his pre-service employer because 1) he did not work for Francis Harvey & Sons within the 90-day period <u>following</u> his release from the service and 2) the act of reporting to an employment site is not equivalent to submitting an application for reemployment.  The fact that he worked for Shiloh Steel after the 90-day period is also not pertinent to whether plaintiff timely applied for reemployment.

Based upon the evidence before the Court, it is unable to determine, as a matter of law, whether plaintiff's actions at the local union hall amounted to an indication to his pre-service employer that he was a former employee returning from military service and seeking reemployment.  Summary judgment is unwarranted with respect to whether plaintiff complied with the reemployment requirement after his third and fourth deployments.

### v.   Fifth deployment

Shea avers that he satisfied the reemployment requirement after his fifth deployment because he worked 1) 64 hours for Magnificent Concrete and Structures Derek within 90 days of his

release from deployment and 2) 133 hours for Southern Folger
after the 90-day period.

The fact that plaintiff reported to those employment sites
and was actually employed by those entities does not properly
address whether he timely submitted an application for
reemployment to his pre-service employer.  Summary judgment with
respect to whether plaintiff timely applied for reemployment
after his fifth deployment is unwarranted.

### vi.  Later deployments

The amended complaint does not assert claims to pension
credits purportedly accrued during plaintiff's sixth and seventh
deployments.  The Court therefore declines to consider the
dispute between the parties concerning those deployments.

Accordingly, the Court will deny both motions for summary
judgment with respect to plaintiff's claim that he is entitled
to accrue pension credits for the 2007-2013 periods of his
military service.

### Count 2: Discrimination against servicemembers

Plaintiff contends in Count 2 that defendants violated
§ 4311 when they discriminated against him, based upon his
military service, by requiring him to perform additional years
of employment before receiving pension benefits to which he is
already entitled under § 4318.

Section 4311 provides that a person who has performed military service "shall not be denied . . . any benefit of employment by an employer" on the basis of his or her performance of military service. § 4311(a).

To prevail on his claim, plaintiff must make an initial showing that his military service was a "motivating" or "substantial" factor for the action taken by the employer. § 4311(c)(1); Velazquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 17 (1st Cir. 2007).  If he is successful, the burden then shifts to the employer to prove, by a preponderance of the evidence, that it would have taken the action regardless of plaintiff's military service. Velazquez-Garcia, 473 F.3d at 17.  The underlying issue is not whether the employer is "entitled" to impose heightened requirements on an employee for a particular reason but whether it would have done so even if the employee had not served in the military. See id. at 20.

Here, Shea asserts that the Pension Plan discriminatorily requires him and other returning servicemembers, but not other returning employees such as disabled employees seeking reemployment, to complete 300 hours of employment and accrue 2.5 pension credits in order to receive pension credit for military service.  He proffers evidence that defendants intended those additional requirements to prevent returning servicemembers from

"tak[ing] advantage of the pension fund and avoid[ing] service within the trade by retiring young."

Defendants respond that plaintiff lacks standing to challenge the 300-hour and 2.5-credit requirements in the Pension Plan because 1) his claims to benefits are barred by USERRA's five-year limit on cumulative military service and its requirement of timely application for reemployment and thus 2) the 300-hour and 2.5-credit requirements did not cause him an injury sufficient to establish standing. They also deny that the 300-hour and 2.5-credit requirements discriminate against servicemembers and emphasize that they are "unique as they permit up to five (5) years of non-work hours to be converted to creditable service."

The issue of standing to assert a discrimination claim turns on whether plaintiff timely applied for reemployment with his pre-service employer. That is because, as discussed above, 1) the five-year limit does not preclude his pension claims and 2) with respect to servicemembers returning from over 180 days of military service, the 300-hour and 2.5-credit requirements in the Pension Plan apply only to servicemembers who do not timely apply for reemployment under USERRA.

If the disputed issue of material fact with respect to whether plaintiff timely applied for reemployment is ultimately resolved in his favor, the 300-hour and 2.5-credit requirements

-25-

will not apply to his pension claims and he will not have standing to raise a discrimination claim under § 4311.

If, however, the issue of timely application for reemployment is resolved in defendants' favor, then the 300-hour and 2.5 credit requirements will apply to the pension claims. That would furnish plaintiff with 1) a cognizable injury in the form of a denial of pension credits based upon his alleged failure to satisfy those additional requirements and thus 2) standing to assert the discrimination claim.  Accordingly, the Court is unable to determine at this stage of the litigation that plaintiff lacks standing to litigate his discrimination claim.

Although defendants apparently concede plaintiff's substantiated assertion that his military service was the motivating factor in their imposition of the 300-hour and 2.5-credit requirements on him, the Court declines to opine on the merits of the discrimination claim until after resolution of the factual dispute with respect to plaintiff's timely applications for reemployment post-military service.

Accordingly, both motions for summary judgment with respect to the discrimination claim will be denied.

### Count 3: Failure to make annuity contributions

According to Count 3, defendants violated § 4318 when they refused to contribute to plaintiff's annuity account as required

by USERRA and the Annuity Plan.  The parties agree that Shea's individual annuity account is a pension benefit account subject to the provisions of § 4318 but dispute his entitlement to annuity contributions.

Section 4318 provides that an employer that reemploys a returning servicemember must contribute to his or her pension benefit account for his or her period of military service in the same manner and to the same extent that it contributes to the pension benefit accounts of other employees. § 4318(b)(1).  The statute allows the employer to allocate the responsibility to make contributions to "the last employer employing the person before the period [of military service]" unless that last employer is no longer functional. Id.

As discussed above, a returning servicemember who seeks reemployment within the meaning of USERRA must have less than five years of cumulative military service and must apply for reemployment with the pre-service employer within 90 days of completing the period of military service.  Here, there is a genuine issue of material fact as to whether plaintiff timely applied for reemployment after each relevant period of military service.  The resolution of that issue will affect whether Shea is entitled to reemployment benefits such as annuity contributions for his periods of military service.

Accordingly, the Court declines to consider the merits of the annuity claim until the factual dispute with respect to plaintiff's timely application for reemployment is resolved. Both motions for summary judgment with respect to the annuity claim will be denied.

<u>ORDER</u>

For the foregoing reasons, plaintiff's motion for summary judgment (Docket No. 42) is, with respect to the preemption of the 300-hour and 2.5-credit requirements in the Pension Plan for certain servicemembers by USERRA, **ALLOWED**, but is otherwise **DENIED** and defendants' motion for summary judgment (Docket No. 45) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 1, 2016